# UNITED STATES DISTRICT COURT
for the
Eastern District of Arkansas

Northern Division

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 19 2022

TAMMY H. DOWNS, CLERK
By: _____ DEP CLERK

Kweh, Queyonoh

)
)
)
)

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

Social Security Administration, Agency
Kilolo Kijakazi, Acting Commissioner of The Social Security Administration, Agency

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Case No. 3:22-cv-00218 DPM/JJV
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)*  ☐ Yes  ☐ No

This case assigned to District Judge MARSHALL
and to Magistrate Judge VOLPE

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**I. The Parties to This Complaint**

    **A. The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Queyonoh Kweh |
| Street Address | 2605 Cherokee Street |
| City and County | Jonesboro (Craighead County) |
| State and Zip Code | Arkansas 72401 |
| Telephone Number | 870-627-0214 |
| E-mail Address | queyonoh.kweh@gmail.com |

Mailing Address:
P.O. Box 1153
State University, Ar
72467

    **B. The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Social Security Administration, Agency Kilolo Kijakazi |
| Job or Title *(if known)* | Acting Commissioner |
| Street Address | 6401 Security Boulevard |
| City and County | Baltimore |
| State and Zip Code | MD 21235 |
| Telephone Number | (410) 965-4700 |
| E-mail Address *(if known)* | |

Defendant No. 2

Name
Job or Title *(if known)*
Street Address
City and County
State and Zip Code
Telephone Number
E-mail Address *(if known)*

Defendant No. 3

Name
Job or Title *(if known)*
Street Address
City and County
State and Zip Code
Telephone Number
E-mail Address *(if known)*

Defendant No. 4

Name
Job or Title *(if known)*
Street Address
City and County
State and Zip Code
Telephone Number
E-mail Address *(if known)*

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Social Security Administration |
| Street Address | 601 East 12th Street |
| City and County | Kansas City |
| State and Zip Code | MO 64106 |
| Telephone Number | (816) 936-3000 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑ Americans with Disabilities Act of 1990. as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Other federal law *(specify the federal law)*:
Retaliation (Govt. Code, § 12653; Lab. Code, § 1102.5) FEHA Violations (Gov. Code, §§ 1296(

☐ Relevant state law *(specify, if known)*:

☐ Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.  The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [ ] Failure to hire me.
- [✔] Termination of my employment.
- [ ] Failure to promote me.
- [✔] Failure to accommodate my disability.
- [ ] Unequal terms and conditions of my employment.
- [ ] Retaliation.
- [✔] Other acts *(specify)*: Physical Assault by other employee, Dishonest Employment Actio

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.  It is my best recollection that the alleged discriminatory acts occurred on date(s)
2009 - 2009

C.  I believe that defendant(s) *(check one)*:
- [ ] is/are still committing these acts against me.
- [ ] is/are not still committing these acts against me.

D.  Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- [✔] race
- [✔] color
- [ ] gender/sex
- [ ] religion
- [✔] national origin
- [ ] age *(year of birth)*     *(only when asserting a claim of age discrimination.)*
- [✔] disability or perceived disability *(specify disability)*

Retaliation

E.  The facts of my case are as follows. Attach additional pages if needed.

I was subject to harassment, discrimination, undue hardship, and unlawful termination based on race, national origin, disability, and retaliation. I am disabled and now suffer long term effects caused by the exasperation of my disability that resulted from the harassment, discrimination, undue hardship, and unlawful termination I endured. I was not provided reasonable accomodation for my disability. The agency has also placed a financial charge on my credit totaling more than $25,000.00 for an unknown purpose. They have continued to garnish my federal refund. I have never been advised of why this charge was placed on my credit report.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

### IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*
02/26/2018, 06/18/2019, 02/25/2019, 02/26/2018

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)*   05/24/2022

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.
☐ less than 60 days have elapsed.

### V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

```
Back and Forward Pay:   $500,000.00
Punative Damages:     $1,000,000.00
Pain and Suffering:   $1,000,000.00
Eronious Debt:           $30,000.00
```

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    08/19/2022

Signature of Plaintiff

Printed Name of Plaintiff    Queyonoh Kweh

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Queyonoh Kweh, a/k/a
Donna B.,[1]
Complainant,

v.

Kilolo Kijakazi,
Acting Commissioner,
Social Security Administration,
Agency.

Appeal No. 2021001040

Hearing Nos. 560-2019-00112X, 560-2019-00335X

Agency Nos. KC-18-0456-SSA, NY-19-0127

DECISION

Complainant filed an appeal, pursuant to 29 C.F.R. § 1614.403, from the Agency's November 20, 2020 final order concerning an equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. and Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq. For the following reasons, the Agency's decision is AFFIRMED.

BACKGROUND

At the time of events giving rise to this complaint, Complainant worked at the Agency as a Claims Specialist, GS-11, Section 3, Mid-America Program Service Center, Office of the Regional Commissioner, in Kansas City, Missouri.

On May 23, 2018, Complainant filed a complaint, Agency No. KC-18-0456-SSA, alleging that:

1. She was subjected to harassment based on her race (Black African American), national origin (Liberian), disability, and in reprisal for prior EEO activity since January 29, 2018,

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

   regarding a performance improvement plan, time and attendance issues, a suspension, work assignments, and working conditions.

2. She was subjected to discrimination based on her race, national origin, disability, and in reprisal for prior EEO activity when on January 29, 2018, she learned management changed her Leave Without Pay (LWOP) under the Family and Medical Leave Act (FMLA) to Absent Without Leave (AWOL).

3. The Agency unreasonably delayed granting her reasonable accommodation request based on disability until January 29, 2018.

4. She was subjected to discrimination based on her race, national origin, disability, and in reprisal for prior EEO activity when on February 26, 2018, management suspended her for five days.

5. She was subjected to discrimination based on her race, national origin, disability, and in reprisal for prior EEO activity when on March 6, 2018, she was placed on a Performance Assistance Plan (PAP).

Complainant has not challenged the claims identified by the Agency. On June 14, 2018, the Agency accepted claims 1 - 5 for investigation.

On January 15, 2019, Complainant filed a complaint, NY-19-0127, alleging that:

6. The Agency failed to provide her with reasonable accommodation based on her disability from October 18, 2018, and ongoing.

7. She was subjected to harassment based on her race, disability, and in reprisal for prior EEO activity from October 18, 2018, and ongoing until December 19, 2018.

8. She was subjected to discrimination based on her race, disability, and in reprisal for prior EEO activity when on October 17, 2018, and November 10, 2018, she received a proposal to remove her from federal service.

Complainant has not challenged the claims identified by the Agency.

On February 19, 2019, the Agency accepted claims 6 and 7 for investigation. The Agency however dismissed claim 8 as it alleged a proposal to take a personnel action, pursuant 29 C.F.R. § 1614.107(a)(5). Therein, the Agency clearly notified Complainant to amend her complaint if or when she was terminated. Complainant did not amend her complaint to include her January 7, 2019 removal.

After completion of its investigation into the accepted claims of the complaints, the Agency provided Complainant with a copy of the report of investigation and notice of right to request a hearing before an Equal Employment Opportunity Commission (EEOC or Commission) Administrative Judge (AJ). Complainant requested a hearing. The Agency submitted a motion for a decision without a hearing. The AJ consolidated the complaints and subsequently issued a decision by summary judgment in favor of the Agency. The AJ found the Agency's dismissal of claim 8 was proper since Complainant did not seek to amend her complaint for her actual termination. The AJ also found that the Agency articulated legitimate, nondiscriminatory reasons for its actions. The AJ further found that Complainant failed to establish that she was subjected to unlawful disparate treatment or unlawful harassment or that she was denied a reasonable accommodation.

Complainant indicated that in November 2017, she was diagnosed with major depressive disorder (MDD), generalized anxiety disorder (GAD) and post-traumatic stress disorder (PTSD), acute. As a Claims Specialist, GS-11, Complainant indicated that her duties involved interviewing and examining evidence to obtain, clarify, and verify information about individual applicants' initial and continuing eligibility for Retirement, Survivors, Disability Insurance, Black Lung, health insurance benefits, and eligibility for Supplemental Security Income payments, including state supplements where required. Complainant stated that she could perform her duties as long as she was free of an environment that did not exacerbate her symptoms or trigger her PTSD. Complainant indicated that she was subjected to harassment by her supervisor (S#1) in Section 1 that exacerbated her symptoms and triggered her PTSD.[2] S#1 was Complainant's first level supervisor from March 5, 2017 to November 20, 2017, at which time Complainant was supervised by a new supervisor (S#2) in Section 1. Complainant then asked to be reassigned to a different office as a reasonable accommodation. Complainant's request was approved. Beginning January 29, 2018, Complainant was reassigned to Section 3, under a new supervisor (S#3).

Regarding claims 1 and 5, as Complainant was newly reassigned to Section 3 on January 29, 2018, S#3, her new first level supervisor in Section 3, held a meeting with her on that day to discuss her duties and S#3's expectations for her work performance. Specifically, Complainant was informed that 100% of her casework would be reviewed by a designated reviewer (who would provide assistance and give feedback on the accuracy of her work product) from January 30, 2018 through February 12, 2018 (two weeks); she would be expected to work an average of 11 assigned cases per day at 82% accuracy; and she would be required to work a variety of casework accurately and independently. The record indicates that Complainant had all of her casework reviewed by two designated reviewers from November 1 – 22, 2017.

---

[2] Our records indicate that on January 3, 2018, Complainant filed a prior complaint, Agency No. KC-17-0960-SSA, concerning her work assignments, work reviews, and poor work performance appraisals while she was working in Section 1 under a retired supervisor and subsequently under S#1. The Agency issued its final decision dismissing the complaint due to untimely filing of a formal complaint. Upon appeal, the Commission, in EEOC Appeal No. 0120181241 (July 26, 2018), affirmed the Agency's final decision.

The record indicates that on February 20, 2018, S#3 held a meeting with Complainant to discuss her performance. Specifically, Complainant was informed that from January 30 through February 12, 2018, she completed 82 cases for an average of 9.51 cases per day; 51 cases were correct, 22 were nonchargeable, and 9 were in error (with total accuracy of 89%). Due to her unsatisfactory work performance, stated S#3, on March 6, 2018, Complainant was placed on the PAP for at least 30 days beginning March 12, 2018, to improve her performance.

S#3 indicated that he did not have time and attendance issues with Complainant. We note that Complainant did not provide any specific incidents involving her time and attendance issues with S#3. Complainant's time and attendance issues involving S#1 and S#2 are addressed in claim 2, herein. S#3 noted that beginning April 9, 2018, he no longer supervised Complainant after she alleged a hostile work environment.³ Complainant reported directly to S#4 (S#3's supervisor, Deputy Operations Manager for Section 3). S#3 stated that he properly applied the Agency's guidelines for performance evaluation, PAP, and work assignments.

The record indicates that on May 4, 2018, S#4 placed Complainant on an Opportunity to Perform Successful Plan because despite additional assistance during the PAP, her performance did not improve to an acceptable level. S#4 stated that for the duration of the PAP (March 12, 2018 to April 13, 2018), Complainant worked an average of 4.66 cases per day with 80.68% accuracy for her assigned casework. S#4 noted that during the PAP, Complainant was assigned to a reduced workload and was instructed to work only from her processing queue. However, stated S#4, Complainant worked on many cases that were "not" assigned to her which were lower priority cases which were taken from either the screening or backlog queues of other employees, whereas her processing queue/assigned cases were the highest priority casework.

Regarding claim 2, S#1 indicated that Complainant began taking leave on November 2, 2017, without notifying her about the leave request. S#1 noted that beginning December 2017, Complainant reported to S#2. S#2 stated that from November 2017 to January 2018, he had numerous phone conversations with Complainant and requested her to provide additional medical documentation to support her leave from November 2, 2017 through January 29, 2018. Complainant failed to provide such documentation and her LWOP was changed to AWOL. S#2 subsequently issued Complainant a proposed 14-day suspension on March 19, 2018, for AWOL on December 27, 2017 – January 5, 2018, January 12, 2018, and January 23 – 26, 2018. On April 3, 2018, Complainant provided additional documentation for her LWOP to the Deputy Operations Manager for Section 1. On April 11, 2018, the Deputy Operations Manager overturned the proposed suspension, and AWOL was changed to LWOP under the FMLA accordingly. Complainant acknowledged this.

---

³ The record indicates that from April 9, 2018, to July 27, 2018, the Agency conducted an investigation of Complainant's allegation of harassment against a number of Agency managerial officials, including S#2, S#3, and S#4. After interviewing and obtaining written statements from eight witnesses related to the allegation, including Complainant, S#2, S#3, and S#4, the investigation concluded that Complainant's harassment allegation was unsubstantiated by the evidence. Complainant was informed of the investigation's findings on August 16, 2018.

Regarding claim 3, although Complainant initially alleged that the Agency unreasonably delayed granting her reasonable accommodation request, she later stated that the Agency did not delay her request. We note that the record reveals that Complainant requested a reassignment to a different office as a reasonable accommodation on November 20, 2017. After she provided medical documentation on January 12, 2018, discussed herein, Complainant was reassigned to a different office (Section 3 from Section 1) effective January 29, 2018.

Regarding claim 4, S#2 indicated that on January 18, 2018, he issued to Complainant a proposal to suspend her for taking 152 iterations of Personal Identifying Information (PII) off Agency premises. Complainant acknowledged that she took the PII documents and left them in a locked file cabinet prior to leaving for her November 2017 FMLA, described in claim 2. S#2 stated that on December 4, 2017, Complainant arrived at the federal building with 357 pages of documents containing PII for SSA (Social Security Administration) beneficiaries. These documents were not redacted and contained 967 iterations of SSA numbers. S#2 noted that Complainant took these documents on November 1, 2017, without management's permission; and they were recovered on December 4, 2017, when she was at a meeting with other managers. On February 6, 2018, a Module Manager for Workload Support Unit, concurred with the proposal and issued Complainant the five-day suspension for February 26 – March 2, 2018, based on her removal of PII documents from the workplace.

Regarding claims 6 and 7, Complainant requested to her Assistant Regional Commissioner (ARC), a reassignment out of the Mid America Payment Service Center, Region 7. The ARC then referred Complainant's request to the National Regional Accommodation Coordinator (NRAC). The record indicates that Complainant submitted her Clinical Professional Counselor's April 2, 2018 letter to support her request. Therein, the counselor stated that she had seen Complainant since December 7, 2017, and Complainant was diagnosed with MDD, GAD, and PTSD, acute. The counselor noted that in her January 12, 2018 letter, she indicated to the Agency that Complainant needed a reassignment to a different section/location for her well-being and to not be in a hostile work environment where she felt she was being over-scrutinized, her work was being misrepresented, and she was held to a different standard than her coworkers. The counselor stated that Complainant could work via telework or be assigned to a different section and/or location/branch. However, at this time, stated the counselor, her recommendation for Complainant's best interest was that she be granted reasonable accommodations of "offsite" work and reporting, which meant she needed a relocation. The counselor noted that Complainant could have flares that were "seasonal, situation, and stress oriented."

In response, the NRAC issued an April 13, 2018 memorandum to Complainant acknowledging that in January 2018, Complainant did request reassignment to another section as a reasonable accommodation. Complainant's request was granted, and she was reassigned to Section 3 from Section 1 on January 29, 2018. Regarding the instant April 2nd request, the NRAC informed Complainant that her submitted documentation did not provide sufficient justification to link her functional limitations with her requested accommodation and asked her to provide additional necessary medical information by submitting an attached medical questionnaire filled out by her health care provider(s).

Complainant submitted the requested questionnaire completed by her family medical doctor (not the counselor) on May 2, 2018. Therein, the doctor indicated that he agreed with the counselor's assessment and accommodations stated/requested and recommended a "relocation" as well. He noted that, "[P]atient was moved to another office but is still subject[ed] under the same management team, which is contributing to MDD, GAD, and PTSD. She feels being back in the environment (under the same management) is contributing to worse anxiety and depression. I feel relocation, under new management team should certainly be considered and granted if possible."

The record indicates that Complainant submitted a FMLA form which was completed and signed by the family medical doctor on November 8, 2017. Therein, the doctor indicated that he saw Complainant on November 1, 2017, and she had been undergoing treatment for MDD, GAD, and PTSD since then. The doctor further included an addendum dated March 16, 2018, noting that, "[f]lare ups are likely to occur up to 4x/year and can last days to months. OK to work with accommodation and treatment. Last lifetime." In a FMLA form filled out and signed by the counselor on March 22, 2018, she indicated that Complainant's medical conditions commenced on December 6, 2017, and her conditions could be "triggered and exacerbated by various stimuli and environment(s) (i.e., work location)."

The Agency indicated that Complainant initially requested telework or a transfer out of her current Region 7 (the Kansas City Region), but later she withdrew her telework request. Management engaged in the interactive process in order to accommodate Complainant's medical conditions. Specifically, management offered Complainant a reassignment to the North Kansas City Field Office or, if she remained in her current office, to communicate with management only through writing, which would enable her to perform her duties. Complainant declined both options. It appears that the North Kansas City Field Office is in a different location, under different management, although it is in Kansas City where Complainant's current office was. The NRAC indicated that Complainant's medical documentation did not show that a transfer out of her current Region 7 was necessary to enable her to perform the essential functions of her job. On October 18, 2018, the NRAC ultimately denied Complainant's request to be reassigned to another Region. We note that Complainant requested to be reassigned to another region, preferably Atlanta or Dallas, as a reasonable accommodation for her medical conditions.

S#3, S#4, and Complainant's second level supervisor, denied subjecting Complainant to harassment, sabotaging her work performance reviews or subjecting her on an erroneous performance plan. S#4 indicated that she observed that Complainant was not working a variety of cases and she struggled with appeals/hearing cases and complex cases.

The Agency issued its final order adopting the AJ's decision. The instant appeal followed.

7                                                                                        2021001040

## ANALYSIS AND FINDINGS

*Standard of Review*

The Commission's regulations allow an AJ to grant summary judgment when he or she finds that there is no genuine issue of material fact. 29 C.F.R. § 1614.109(g). An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). A fact is "material" if it has the potential to affect the outcome of the case. In rendering this appellate decision, we must scrutinize the AJ's legal and factual conclusions, and the Agency's final order adopting them, *de novo*. See 29 C.F.R. § 1614.405(a)(stating that a "decision on an appeal from an Agency's final action shall be based on a *de novo* review..."); see also Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO-MD-110), at Chap. 9, § VI.B. (as revised, August 5, 2015)(providing that an administrative judge's determination to issue a decision without a hearing, and the decision itself, will both be reviewed *de novo*).

In order to successfully oppose a decision by summary judgment, a complainant must identify, with specificity, facts in dispute either within the record or by producing further supporting evidence and must further establish that such facts are material under applicable law. Such a dispute would indicate that a hearing is necessary to produce evidence to support a finding that the agency was motivated by discriminatory animus. Here, however, Complainant has failed to establish such a dispute. Even construing any inferences raised by the undisputed facts in favor of Complainant, a reasonable fact finder could not find in Complainant's favor.

Initially, we find that the Agency properly dismissed claim 8 as a proposed action. See 29 C.F.R. § 1614.107(a)(5). We note that Complainant did not amend the claim as advised when she was ultimately removed from the Agency effective January 7, 2019.

*Claims 1 – 7*

To prevail in a disparate treatment claim such as this, complainant must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Complainant must initially establish a prima facie case by demonstrating that he or she was subjected to an adverse employment action under circumstances that would support an inference of discrimination. Furnco Construction Co. v. Waters, 438 U.S. 567, 576 (1978). Proof of a prima facie case will vary depending on the facts of the particular case. McDonnell Douglas, 411 U.S. at 804 n. 14. The burden then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Once the agency has met its burden, the complainant bears the ultimate responsibility to persuade the fact finder by a preponderance of the evidence that the agency acted on the basis of a prohibited reason. See St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

8                                                                                                  2021001040

This established order of analysis in discrimination cases, in which the first step normally consists of determining the existence of a prima facie case, need not be followed in all cases. Where the agency has articulated a legitimate, nondiscriminatory reason for the personnel action at issue, the factual inquiry can proceed directly to the third step of the McDonnell Douglas analysis, the ultimate issue of whether complainant has shown by a preponderance of the evidence that the agency's actions were motivated by discrimination. See U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 713-714 (1983); Hernandez v. Dep't of Transportation, EEOC Request No. 05900159 (June 28, 1990); Peterson v. Dep't of Health and Human Services, EEOC Request No. 05900467 (June 8, 1990); Washington v. Dep't of the Navy, EEOC Petition No. 03900056 (May 31, 1990).

Harassment is actionable if it is sufficiently severe or pervasive that it results in an alteration of the conditions of a complainant's employment. See Enforcement Guidance on Harris v. Forklift Systems, Inc., EEOC Notice No. 915.002, at 3 (Mar. 8, 1994). In order to establish a claim of harassment, Complainant must show that: (1) she belongs to the statutorily protected classes or engaged in prior EEO activity; (2) she was subjected to unwelcome conduct related to her membership in those classes or her prior EEO activity; (3) the harassment complained of was based on those classes or that activity; (4) the harassment had the purpose or effect of unreasonably interfering with her work performance and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability to the employer. See Henson v. City of Dundee, 682 F.2d 897 (11th Cir. 1982).

Upon careful review of the AJ's decision and the evidence of record, as well as the parties' arguments on appeal, we conclude that the AJ correctly determined that the preponderance of the evidence did not establish that Complainant was discriminated against by the Agency as alleged. There is no indication that any alleged action was motivated by discrimination.

Complainant acknowledged that her AWOL was changed to LWOP under the FMLA after she provided her medical documentation. The record reveals that Complainant was suspended for five days on February 26 – March 2, 2018, for her removal of PII documents from the workplace. Complainant acknowledged removing PII documents from her office. Complainant also acknowledged that she was granted her request for a reasonable accommodation to be reassigned to a different office (Section 3 from Section 1) on January 29, 2018. The evidence of record, including emails, memoranda, and OJT (on-the-job training) feedbacks for Complainant's submitted cases/claims, reveals that Complainant had a performance issue while she was in Section 1 under S#1 and then under S#2 in 2017. After her reassignment to Section 3, Complainant's performance did not improve and as a result, she was placed on the PAP by S#3 on March 6, 2018. Further, upon her request, Complainant's supervisor was again changed from S#3 to S#4, at which time she requested a relocation to a different region as a reasonable accommodation, described herein.

After a careful review of the record, we find that Complainant failed to show that she was treated differently than other similarly situated employees regarding the alleged incidents.

Regarding her claim of harassment, considering all the events, we find that Complainant failed to show that it was related to any protected basis of discrimination. Even if the proposed removal was considered for purposes of harassment, we find no indication that similarly situated persons were treated differently or it was issued for the purpose of discriminatory harassment.

*Reasonable Accommodation*

The Rehabilitation Act of 1973 prohibits discrimination against qualified disabled individuals. See 29 C.F.R. § 1630. In order to establish that complainant was denied a reasonable accommodation, complainant must show that: (1) he or she is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) he or she is a qualified individual with a disability pursuant to 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide a reasonable accommodation. See EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, EEOC No. 915.002 (Oct. 17, 2002) (Enforcement Guidance).

Under the Commission's regulations, an agency is required to make reasonable accommodation to the known physical and mental limitations of a qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship. 29 C.F.R. §§ 1630.2(o), 1630.2(p).

Here, we will assume without deciding (for the purposes of this decision) that Complainant was an individual with a disability.

As a reasonable accommodation, Complainant requested that she be relocated to a different region (not her current Region 7 – the Kansas City Region), preferably in Atlanta or Dallas Region. Upon review, we find that Complainant did not produce any evidence or medical justification to show that her relocation to a different region would effectively accommodate her disability to perform the essential functions of her position duties. Complainant's medical documents did not show that working in a different region would guarantee her an environment that would not exacerbate or trigger her symptoms. In fact, her doctor and counselor stated that Complainant's flare-ups were likely to occur; her symptoms could be seasonal, situation, and stress oriented; and her conditions could be exacerbated by various stimuli and environment. Complainant failed to show that the Agency's offered reassignment to the North Kansas City Field Office, which was in a different location, under a different management, would not effectively accommodate her medical conditions to perform the essential functions of her position duties. Complainant rejected the Agency's offer. We find Complainant's concern that her current management might influence the Kansans City Field Office management is speculative with no supporting evidence. Further, despite her claim, it is noted that Complainant was not entitled to an accommodation of her choice, i.e., to be reassigned/relocated to Atlanta or Dallas Region. See 29 C.F.R. § 1630.9; Enforcement Guidance at Question 9.

After a review of the record, we find that Complainant failed to show that she was denied a reasonable accommodation; any Agency action was motivated by discrimination; or she was subjected to harassment.

10                                                                         2021001040

The record indicates that Complainant is no longer employed by the Agency effective January 7, 2019. Her separation from the Agency is not at issue in this appeal. Based on the foregoing, we find that Complainant was not discriminated against as alleged.

## CONCLUSION

Accordingly, we AFFIRM the Agency's final order adopting the AJ's decision.

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0920)

The Commission may, in its discretion, reconsider this appellate decision if Complainant or the Agency submits a written request that contains arguments or evidence that tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or
2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or brief must be filed together with the request for reconsideration**. A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

Complainant should submit his or her request for reconsideration, and any statement or brief in support of his or her request, via the EEOC Public Portal, which can be found at https://publicportal.eeoc.gov/Portal/Login.aspx. Alternatively, Complainant can submit his or her request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, a complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604.

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless Complainant files his or her request via the EEOC Public Portal, in which case no proof of service is required.

11                                                                         2021001040

Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. **Any supporting documentation must be submitted together with the request for reconsideration.** The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

### RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

_____
Carlton M. Hadden, Director
Office of Federal Operations


May 24, 2022
Date